# United States Court of Appeals
## for the Fifth Circuit

————————

No. 23-30592

————————

United States Court of Appeals
Fifth Circuit

**FILED**
September 10, 2024

Lyle W. Cayce
Clerk

Mary Guillory,

*Plaintiff—Appellant*,

*versus*

Crete Carrier Corporation; Yazdani Kourosh,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:22-CV-1046

———————————————————————

Before Jones, Willett, and Engelhardt, *Circuit Judges*.

Per Curiam:[*]

On May 13, 2020, the rear tires on the driver's side of a tractor-trailer driven by Defendant-Appellee Kourosh Yazdani (hereinafter, "Yazdani"),[1] an employee of Defendant-Appellee Crete Carrier Corporation, sideswiped the driver's side of a four-door sedan, a 2008 Pontiac G6, driven by Plaintiff-Appellant Mary Guillory. At the time of the accident, the two vehicles were

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

[1] Defendant-Appellees' brief reports that the individual defendant, Kourosh Yazdani, has been improperly named as "Yazdani Kourosh."

traveling in opposite directions on Acadiana Prep Circle, a two-lane, two-way road in St. Landry Parish, Louisiana, near the city of Opelousas. As reflected by the trial evidence (photographs and the police accident report included in the court's record, the collision occurred as Guillory's car approached, and Yazdani's tractor-trailer was completing, a narrow, sharp curve in the road where it passed under an elevated roadway. In the course of the turn, the rear of Yazdani's eastbound trailer crossed over the road's center (two solid, yellow) lines into Guillory's westbound lane. Though Yazdani had stopped the tractor-trailer when Guillory first saw it, attempting to maneuver out of the way and return the entirety of his trailer to the eastbound lane, his efforts fell short. Thus, when he tried to proceed past Guillory's car, Yazdani's rear tires, which remained in Guillory's lane, scraped along the rear half of the driver's side of her car. Because Yazdani was driving "very slow[ly]" at the time—Guillory estimated, in a "new patient" medical information form, his and her speeds to have been 10 mph—the impact was minimal.[2] According to Guillory, the impact of the trailer moved her car back "a little"—"maybe not even like an inch"— and, inside the car, the impact felt like "[a] shake."

A couple hours after the accident, Guillory was treated in the emergency room of Opelousas General Hospital. She was diagnosed with a left ankle sprain and a cervical sprain; the hospital records of the visit do not reflect a complaint of back pain. Two days later, on May 15, 2020, Guillory, having consulted an attorney, went to Metropolitan Health Group, upon the attorney's recommendation, in Lafayette, Louisiana. At that time, she complained of back pain, headaches, left ankle/foot pain and neck pain. She was examined, prescribed medications, and began a course of conservative care at Metropolitan— physical medicine treatments consisting of moist heat,

---

[2] The police accident report indicates that the eastbound posted speed limit is 20 mph.

cold packs, electronic stimulation, ultrasound and massage two or three times each week—that continued until September 25, 2020.

On August 28, 2020, approximately three months after the May 13, 2020 accident, Guillory underwent cervical and lumbar MRIs at the recommendation of Dr. Mack, her treating physician at Metropolitan. The lumbar MRI revealed fluid in her lower facet joints, a "subtle partial tear" of the annulus at L5-S1, and fluid at the bony end joint at S1.. Thereafter, on October 20, 2020, Guillory began treatment by Dr. F. Allen Johnston, an orthopedic surgeon.

While under Dr. Johnston's care, Guillory reported on-and-off low back pain through March 2023. During that time, Dr. Johnston recommended and performed facet joint injections (on January 15, 2021), a lumbar medial branch block diagnostic test (on June 4, 2021), and two radiofrequency ablations ("RFAs") (on January 20, 2022, and March 28, 2023). Although she reported a return of some low back pain on or about April 9, 2023—less than two weeks after the second RFA—Guillory testified that she did not want to undergo a third RFA (or other needles) at that time because she had just learned that she was pregnant.[3]

---

[3] Dr. Johnston indicated that RFA-provided pain relief should last 6–18 months. The treatment notes from Guillory's appointments after the initial RFA reported several months of pain relief.

No. 23-30592

I.

On April 20, 2021, Guillory filed a petition for damages in Louisiana state court. Following removal to federal court, in April 2022, a two-day jury trial was held on July 10–11, 2023. The only witnesses were Guillory and Dr. Johnston. Arguing that the collision was entirely the result of Yazdani's negligence, Guillory sought an award of $47,384.76 for past medical expenses; $10,314 for future medical expenses (a third RFA); $36,000 for past lost wages; $8,320 per year for future lost wages (until she resumed her pre-accident earnings of $16,640 per year); an unspecified amount of damages for past and future physical and mental pain and suffering; and an unspecified amount of damages for past and future loss of enjoyment of life.

In response, counsel for Crete and Yazdani[4] argued that Guillory could have avoided the collision and, because she did not, should bear responsibility for a percentage of the fault for the May 13, 2020 accident. Regarding damages, the defendants suggested that the jury award, at most, $4,000 for past physical pain and suffering; past medical expenses of $1,100 for the Opelousas General Hospital emergency room visit and $2,838 for treatment at Metropolitan; $1,000 for six weeks of past lost wages; nothing for future pain and suffering, medical expenses, and wages; and nothing for past or future loss of enjoyment of life.

The jury returned a verdict finding that Guillory was injured as a result of the May 13, 2020 accident and that the accident was caused by the negligence of both Yazdani and Guillory. Regarding percentages of fault and compensatory damages, the jury found:

---

[4] Yazdani was not a trial witness.

No. 23-30592

Fault:

Yazdani - 50%

Guillory - 50%

Compensatory Damages:

| | |
|---|---|
| Physical and Mental Pain and Suffering (Past): | $1,020.00 |
| Physical and Mental Pain and Suffering (Future): | $  510.00 |
| Medical Expenses (Past): | $4,566.30[5] |
| Medical Expenses (Future): | $0 |
| Past Loss of Enjoyment of Life: | $  725.00 |
| Future Loss of Enjoyment of Life: | $0 |
| Past wage loss: | $4,720.00 |
| Future wage loss: | $0 |
| Total: | $11,541.30[6] |

None of the parties filed post-trial motions pursuant to Rule 50(b) or Rule 59 of the Federal Rules of Civil Procedure.

A judgment in accordance with the jury's verdict and fault assessment—yielding a total damage award in Guillory's favor in the amount of $5,770.65, plus interest and certain costs—was entered on July 24, 2023. This appeal followed.

_____

[5] This amount reflects almost all of the expenses for Guillory's medical treatment between May 13, 2020 and September 25, 2020. Only the costs for certain prescription medications and Guillory's two MRIs, totaling $1,112.36, were omitted.

[6] *See* July 11, 2023 Verdict Form.

## II.

On appeal, Guillory challenges the jury's assignment of 50% fault against her, arguing that Yazdani did not rebut the presumption of negligence that applies against him, under Louisiana law, because his vehicle undisputedly was in the wrong lane of travel at the time of the accident. *See, e.g., Tolbert v. Fireman's Fund Ins. Co.,* 98-637 (La. App. 3 Cir. 10/7/98), 719 So. 2d 738, 740 (citing *Simon v. Ford Motor Co.,* 282 So. 2d 126, 128 (La. 1973)); *see also Hartwell v. Travelers Cas. & Sur. Co. of Am.,* No. 6:14-CV-01009, 2015 WL 9482898, at *3 (W.D. La. Dec. 28, 2015). And, while recognizing that a plaintiff (who has been struck by a vehicle not in its proper lane of travel) still can be comparatively at fault, if the plaintiff had a reasonable opportunity to avoid an accident but failed to do so, Guillory argues that she took the evasive actions available to her and there was nothing else she could have done to avoid the accident. Specifically, she points to her trial testimony that, as soon as she saw Yazdani's truck was struggling to negotiate the turn and had crossed over into her lane, she stopped and blew her horn, contending she could not move out of the truck's path because there were other vehicles behind hers.

Guillory maintains that the judgment should be reversed and/or amended to allocate 100% of the fault to Yazdani and Crete. In the alternative, she asks that the judgment be amended to assign the highest percentage that the jury could reasonably assess Yazdani and Crete and, correspondingly, the lowest percentage that it could reasonably assess her. As a last option, Guillory asks that the matter be remanded for a new trial.

Guillory also challenges the jury's awards of damages for past and future medical expenses, as well as for past and future pain and suffering, contending that, under Louisiana law, all are abusively low, and thus constitute an abuse of discretion. Specifically, recognizing that the $4,566.30 award for past medical expenses comprises only the aforementioned $1,168.70

6

emergency room charges at Opelousas General Hospital and $3,397.60 for four months of charges incurred (between May 15, 2020 and September 25, 2020) at Metropolitan, Guillory argues that the record establishes her entitlement to an award encompassing all of the medical expenses that she incurred through the July 2023 trial. These expenses, totaling $38,777.36, include the costs of her prescription medication, the MRIs ordered by Dr. Mack, and the facet joint injections, lumbar medial branch blocks, and two RFAs performed by Dr. Johnston. She asks that the jury's award of past medical expenses be modified to increase the award from $4,566.30 to $38,777.36.

Given the jury's award of $510.00 for future pain and suffering, Guillory maintains that she likewise is entitled to recover an award for future medical expenses, specifically $9,630.00 for a third RFA that, she argues, she probably will eventually need for continued pain relief.

Finally, Guillory maintains that, considering damage awards in other Louisiana cases for pain and suffering associated with RFAs, the jury's award of $1,020 for past pain and suffering should be increased to an amount in the $300,000–$350,000 range. And, assuming that we agree it is more probable than not that a third RFA will be necessary, Guillory requests that the award for future pain and suffering damages be increased to an amount in the $100,000–$175,000 range.

## III.

We have carefully reviewed the parties' briefs, applicable law, and the record in this matter, including the trial and deposition testimony, documentary evidence, closing arguments, and jury instructions. The record reflects that the jury was presented with relevant evidence, heard argument by counsel, and received comprehensive instructions from the district court regarding applicable law. And, except with respect to the jury's failure to

include the $1,000 and $112.36 charges for Guillory's August 2020 MRIs and May 2020 prescription medications, respectively, in its award of past medical expenses, the record reveals no legal basis for disturbing the jury's verdict.

Guillory's assertion of error regarding the jury's allocation to her of 50% of the fault for the May 13, 2020 accident challenges the sufficiency of supporting evidence.  But, since she did not file a motion for judgment as a matter of law, pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, or a motion for a new trial, pursuant to Rule 59, after the jury's verdict, she forfeited her right to seek review of her unpreserved sufficiency challenge to the jury's allocation of 50% of the fault to her. *See Marquette Transp. Co. Gulf-Inland, L.L.C. v. Navigation Mar. Bulgare JSC*, 87 F.4th 678, 687 (5th Cir. 2023); *Simmons v. Garrett,* 705 F. App'x 323, 323 (5th Cir. 2017) (unpub.) (summary calendar) (citing *Ortiz v. Jordan*, 562 U.S. 180, 189 (2011)); *Davis v. Hollier*, 595 F. App'x 428, 429 (5th Cir. 2015) (unpub.) (summary calendar); *Downey v. Strain*, 510 F.3d 534, 543 (5th Cir. 2007); *Price v. Rosiek Const. Co.,* 509 F.3d 704, 707 (5th Cir. 2007).

Furthermore, we find no error in the jury's fault allocation. The jury was properly instructed regarding Yazdani's presumption of negligence and reasonably concluded that the defendants had successfully rebutted it with respect to 50% of the fault for the accident.  Considering the instant record, the jury's 50/50 fault allocation is adequately supported by reasonable inferences drawn from the photographic evidence, the lack of clarity and consistency in Guillory's trial and deposition testimony regarding the May 13, 2020 accident's sequence of events, and reasonable, but adverse, credibility determinations. *See Esposito v. Davis*, 47 F.3d 164, 167 (5th Cir. 1995) ("While state law provides the substantive rules and tests in diversity cases, the applicable federal standard of review for a jury's verdict is one of reasonableness.").

No. 23-30592

The same is largely true regarding the jury's awards of damages, which we uphold unless the verdict is clearly erroneous or one that no reasonable jury could have rendered. *See LHC Nashua P'ship, Ltd. v. PDNED Sagamore Nashua, L.L.C.*, 659 F.3d 450, 456 (5th Cir. 2011). Indeed, the submitted evidence is replete with arguable, if not blatant, inconsistencies, deficiencies, and oddities in Guillory's reports of her injuries, her resulting symptoms, and their impact on her daily activities. Combined with the multiple material misrepresentations in Guillory's 2018–2020 federal income tax returns, it is apparent that the jury likely, and reasonably, concluded that litigation strategy was the controlling factor in Guillory's treatment plan and delayed return to full-time gainful employment after the May 13, 2020 accident.[7] For instance, it is not apparent why, though both Dr. Mack and Dr. Johnston recommended and sought attorney approval for physical therapy, Guillory—a young woman in her early twenties—failed to undertake a physical therapy exercise program for strengthening, improved range of motion, and pain relief.

In any event, it is evident from the jury's findings that these discrepancies seriously damaged, if not destroyed, Guillory's credibility in the eyes of the jury. And, though the result might have differed if the district judge or this panel, rather than a jury, had been the trier of fact, that is not the pertinent inquiry.

Given the foregoing, we affirm the district court's judgment regarding the jury's damage awards except with respect to the jury's failure to include

---

[7] Notably, Dr. Johnston testified, regarding his July 9, 2021 response to Guillory's query about light duty work for a home health company: "I told her that if she could do that without any issues, she could. I told her, you know, especially with people [who] are involved in the medical-legal situation, not to do anything that's going to aggravate your condition, you know, that would just throw a wrench in the whole process.".

No. 23-30592

the $1,000 and $112.36 charges for Guillory's August 2020 MRIs and May 2020 prescription medications in its award of past medical expenses. Because the jury's award includes the May 13, 2020 emergency room charges and the charges incurred for services provided by Metropolitan practitioners in May 2020, the $112.36 charges incurred at CVS for medication prescribed by these providers during the same treatment period also should have been awarded. Given the absence of any evidence that the imaging was outside the medical standard of care, or that the charges were excessive, the same logic applies for the cervical and lumbar MRIs ordered by Dr. Mack (on July 8, 2020) during the same May 15, 2020–September 25, 2020 timeframe as the other medical expenses that the jury awarded for Guillory's treatment by Metropolitan providers. *See Roman v. Western Manu. Inc.,* 691 F.3d 686, 701–02 (5th Cir. 2012) (finding the "constitutional rule against additur not violated where jury has properly determined liability and there is no valid dispute as to the amount of damages"); *see also Wiltz v. Welch*, 651 F. App'x 270 (5th Cir. 2016) (unpub.) (same).

## V.

Accordingly, the judgment of the district court is MODIFIED to reflect an award of past medical expenses in the amount of $1,112.36, which reflects the addition of the costs of Guillory's MRIs and certain prescription medication. In all other respects, the July 24, 2023 judgment is AFFIRMED.